COLEMAN *et al. v.* FLAVEL *et al.*

*(Circuit Court, D. Oregon.* December 26, 1886.)

TRADE REPRESENTATIONS—INJUNCTION.
   Where complainants have built up a business as agents for the sale of canned
   salmon, and in such business have been in the habit of using a printed label placed
   on the cans, giving their firm name and a statement that they were the sole agents
   for such brand of canned salmon, injunction will lie to restrain the false and fraud-
   ulent use by defendants of that part of a label which represents that complainants
   are the sole agents for defendants' salmon, whether defendants' salmon be of an
   equal or inferior quality to those sold by complainants.

In Equity.   On bill for injunction.
*C. W. Fulton,* for plaintiffs.
*Robert L. McKee* and *George W. Yocum,* for defendants.

DEADY, J.   This suit was commenced on November 8, 1886.   It is
prosecuted by the plaintiffs, William T. Coleman, F. S. Johnson, C. C.
Coleman, and Richard Delafield, citizens of California, to have the de-
fendants, George Flavel and Samuel Elmore, citizens of Oregon, enjoined
from using a certain label on salmon packed by them, or so much of the
same as represents that the plaintiffs are the agents for the disposition
of such article.

On the filing of the bill an order was made requiring the defendants
to show cause why a provisional injunction should not issue, and that
the defendants be restrained in the mean time.

The matter was subsequently heard on the bill and sundry affidavits
produced by the plaintiffs and one by the defendants.

The material facts appear to be as follows:

That long prior to the year 1881, and ever since, the plaintiffs have
been, and now are, engaged at San Francisco, under the firm name of
Wm. T. Coleman & Co., in the business of selling Columbia river canned
salmon, as the agents of a large number of persons engaged in packing
said salmon.   That in the conduct of said business the plaintiffs are
accustomed to guaranty the good packing and merchantable quality of
said salmon to the purchasers thereof, and to have printed on a label
placed thereon the said firm name of Wm. T. Coleman & Co., as the sole
agents of such brand of canned salmon.   That during said time the
plaintiffs have disposed of such salmon in all the markets of the world;
and at great expense to themselves in establishing agencies, advertising,
and by fair and honorable dealings, have introduced into such markets
and established there a demand for the brands of salmon represented by
them.   That what is known as the "Columbia river spring salmon,"
which is taken between April 1st and August 1st of each year, is the
most in demand, and commands the highest price in the markets; and
all salmon taken after that time on said river, or at any time elsewhere,
is inferior in quality, and less in demand, and commands less price, than
said spring salmon.

On August 1, 1881, a corporation, the Union Packing Company, was
formed under the laws of Oregon, to engage in canning and packing

salmon at Astoria, and soon after entered into a contract with the plaintiffs whereby the latter agreed to make advances to the corporation to enable it to carry on its business, and also became its sole agent for the sale of its fish. That thereafter said corporation, through the agency of the plaintiffs, had lithographed a parti-colored label, nine and three-quarters inches long and four inches wide, to be placed on the cans of salmon put up by it, which contained the following:

In the left-hand division, a tree and a salmon,—the latter on a dish, as if prepared for the table; and on three sides of it the words, "Union Packing Co., Astoria, Oregon. Fresh Columbia River Salmon." In the right-hand division, which is only two inches long, the words, "Wm. T. Coleman & Co., Sole Agents, San Francisco, Cal., U. S. A.," with directions in the lower half thereof for opening and serving; which labels were used by said corporation in its business, until the assignment of its property for the benefit of its creditors, on July 31, 1884; and that in said year, and prior to said assignment, said corporation procured 500,-000 of said labels to be printed for its use in said business.

In August, 1884, a compromise and final settlement was had between the plaintiffs and the company, contained in a written offer by the latter, dated August 9th, to deliver the former 5,000 cases of salmon, they to repay it certain drawbacks and premiums, and a written acceptance thereof by the plaintiffs, dated August 23d. The offer of the packing company contained the following clause: "And said Union Packing Company claim the right to use the labels they now use on all canned salmon they shall have packed in the year 1884."

On December 2, 1885, the company and its assignee, by separate deeds, conveyed certain real property in Astoria, presumably the cannery, to the defendants, and on the same day the former made a bill of sale to them of a lot of personal property and material, such as usually pertains to a cannery, including "one hundred thousand salmon labels, more or less, (used by Union Packing Company on salmon canned;) also all and singular our right, title, and interest in and to corporation's trademark, box-brand, and label used in packing salmon."

It is charged in the bill that the defendants, on November 5, 1886, placed at least 1,350 cans of salmon, with these labels on the cans, in a warehouse at Astoria, for export to domestic or foreign ports, as opportunity might offer; and that, if the defendants are permitted to export said fish, the reputation and value of the brands of salmon represented by the plaintiffs will be much injured and depreciated in the markets of the world, and plaintiffs thereby greatly and irreparably damaged; and it is admitted in the affidavit of the defendant Elmore that 654 cases of salmon have been labeled by the defendants with copies of the label above described, and stored for export as alleged; and it was also admitted on the argument that the fish therein were taken in the Tillamook river, and not the Columbia.

The defendants contend that the label, as a whole, constitutes a trademark, in which they have the exclusive property, but that the words on the right hand of the label do not constitute such mark; and that, if they

might, not having been recorded as provided by statute, (Gen. Laws Or. 659,) the plaintiffs cannot claim any right to the exclusive use of them.

Generally, words in common use may be adopted as trade-marks, if at the time of their adoption they were not employed to designate the same or like articles. The office of a trade-mark is to indicate with certainty the origin or ownership of the article to which it is affixed. *Canal Co.* v. *Clark*, 13 Wall. 322; Browne, Trade-Marks, §§ 39, 144.

But the plaintiffs do not and need not claim that the words "Wm. T. Coleman & Co., Sole Agents, San Francisco, Cal., U. S. A.," constitute a trade-mark, or that, abstractly considered, they have any exclusive right to the use of them. Their claim is that by means of these words, so placed and used, the defendants are guilty of a false and fraudulent representation, to their injury as well as that of the public.

After a careful examination of the subject, and particularly the discussion contained in the interesting work cited by counsel for defendants, (Browne, Trade-Marks,) I am satisfied that my impression at the argument is correct. This is not a case of trade-mark at all, but one of a false use of a label, with intent to injure the plaintiffs as well as the public.

No one ever had or could have the right to use so much of this label as represents that the plaintiffs are the agents for the sale of the fish in the can on which it is placed without the plaintiffs' consent. The right of the Union Packing Company to the use of these labels originated in the contract with the plaintiffs, by which the latter were constituted the sole agents for the fish packed by the former; and when the relation terminated, and the accounts between the parties were settled, as appears by the agreement of August 9 and 23, 1884, the corporation, in effect, acknowledged that its right to the use of this label ceased, when it stipulated therein for the right to use the same after the cessation of such agency for the pack of that season, which was then probably already labeled.

By the sale to them on December 2, 1885, of the labels on hand, the defendants acquired no more right to the use of them than the corporation had. Doubtless they acquired the right of property in the material, and might make any lawful use of them. By cutting off the right-hand part relating to the agency of the plaintiffs, they might use the remaining or descriptive part on cases of Columbia river salmon; but to use even that part of it on Tillamonk salmon would be a fraud on the public as well as all persons engaged in the packing and sale of the former fish; and, if the left-hand part of this label constitutes the lawful trade-mark of the Union Packing Company, the defendants, under the sale aforesaid, may have the exclusive right to the use of it, unless the failure to record it under the Oregon statute will prevent them.

The two parts of this label are distinct and separate. The plaintiffs make no claim to restrain the use of the descriptive part, and the agency part no one has any right to use without their consent.

The only purpose the defendants can have in using the plaintiffs' part of this label is to avail themselves of the reputation the plaintiffs have established in the markets of the world, as dealers in canned salmon; and,

even if their fish were in all respects equal to those sold by the plaintiffs, still they would, by means of false representations as to the plaintiffs' agency in the matter, so far divert or appropriate the good-will of plaintiffs' business, that has cost them time, money, and good conduct to establish.

However, the fact is the defendants' use of this label—at least, the agency part of it—on the fish in question involves a false and fraudulent representation calculated and intended to deceive the public, and injure the plaintiffs, by palming off on the former, in the name of the latter, an inferior article of salmon for a superior one.    The defendants are not only seeking, by this means, to appropriate or trade on the good-will of the plaintiffs' business, but their conduct tends inevitably to injure or destroy such business.

The defendant Elmore, in his affidavit, says that since the commencement of this suit he received an order from a merchant in Chicago for 450 cases of this salmon; and adds that the party sending the order knew that it was not the Columbia river salmon.    But he does not state that such party was also aware that the plaintiffs were not, in fact, the agents for its sale; that the label was false in this particular, as well as in the origin and character of the fish; and, if the party was truly informed on both these points, does it follow that he would inform the retail dealers and customers, to whom he might dispose of the fish, that it is not what it purports to be, but a spurious article, with which the plaintiffs have nothing to do?    As was said by the chancellor in *Coats* v. *Holbrook*, 2 Sandf. Ch. 597, in answer to a like attempt to palliate the immorality of a similar transaction: "The idea is preposterous.    *   *   *   Labels, etc., are not forged, counterfeited, or imitated with any such honest design or expectation."

The law of this case, considered as one of an unauthorized and fraudulent use of this label, including the representation that the plaintiffs are the sole agents of the fish on which it is placed, is well stated in *Association* v. *Piza*, 24 Fed. Rep. 149.

The plaintiff was a brewer in St. Louis, and exported to South American ports beer in bottles, labeled "St. Louis Lager-Beer," where he had established a profitable trade in that article.    The defendant shipped beer from New York to the same ports, labeled in the same way, and there made sales thereof under the impression on the part of the purchasers that it was really the beer of the plaintiff.

On motion for an injunction, (Circuit Court, S. D. New York,) the court held that while the plaintiff could not "have an exclusive property in the words 'St. Louis,' as a trade-mark, or an exclusive right to designate its beer by the name of 'St. Louis Lager-Beer,' yet, as its beer has always been made at that city, its use of the designation upon its labels is entirely legitimate; and if the defendant is diverting complainant's trade by any practices designed to mislead its customers, whether these acts consist in simulating its labels, or representing in any other way his products as those of the complainant, the latter is entitled to protection.    It is unnecessary, for present purposes, to consider whether the complainant has

a valid trade-mark, or can have a technical trade-mark, in the name of 'St. Louis.' It is sufficient that it was lawful for the complainant to use that name to designate its property; that, by doing so, it has acquired a trade which is valuable to it; and that the defendant's acts are fraudulent, and create a dishonest competition, detrimental to the complainant."

As to the right of a party to be protected by injunction against an unlawful competition in trade by means of a simulated label, see, also, Browne, Trade-Marks, §§ 93, 95, 96, 538.

The defendants have no right to the use of this label, as against the plaintiffs, so far as it represents them as being the sole agents for their fish; and it is not only a fraud on the plaintiffs, but a gross imposition on the public, for them to do so.

The injury to the plaintiffs arising from the conduct of the defendants in this respect is one that cannot be compensated for in damages, for they cannot be computed, and therefore they have no plain, adequate remedy at law, and are entitled to relief in equity by injunction. Let an injunction issue restraining the defendants from using the right-hand division of the label, or so much thereof as represents the plaintiffs as being the agents for the disposition of the fish contained in the can on which it may be placed.